IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.                                                        ) | Criminal No.: 4:23-CR-54 |
| ) | |
| CORTEZ DAYSHAWN BUMPHUS    ) | |
| ) | |

## SUPPLEMENTAL MOTION TO WITHDRAW AS COUNSEL

COMES NOW counsel to defendant Cortez Dayshawn Bumphus, and for his Supplemental Motion to Withdraw as Counsel, filed pursuant to this Court's Order, ECF no. 670, states as follows:

FACTS

The undersigned counsel, (hereafter "Dinkin"), was appointed to represent Mr. Bumphus on April 29, 2024, to replace Mr. Bumphus's then court-appointed counsel Larry Woodward, Jr., who was permitted to withdraw due to a conflict of interest. Dinkin met with Mr. Woodward at his office in Virginia Beach on May 6, 2024, to discuss the case and to pick up the case file, including discovery, which consisted of a bankers' box of printed material and a computer hard drive. On the same day, Woodward and Dinkin drove to the Western Tidewater Regional Jail, ("WTRJ"), for the purpose of Woodward introducing Dinkin to Mr. Bumphus. Mr. Woodward then left the meeting and Dinkin discussed the case with Bumphus for over an hour. Mr. Bumphus was particularly interested in receiving copies of the discovery in his case, which he complained he did not have.

In response to Mr. Bumphus's request for discovery, Dinkin first confirmed with the government that a protective order was not in place limiting what material could be left with the defendant. He then had the entire box of discovery duplicated and, on May 22, 2024, met again

with Mr. Bumphus to provide the discovery materials to him and to review the evidence. The primary material provided to Mr. Bumphus consisted of every Title III phone intercept application filed in the case and the supporting affidavits, as well as the search warrants and supporting affidavits for 5124 Goldsboro Drive, #7, Hampton, Virginia, and 120 Dorothy Drive, Yorktown, Virginia, and for two vehicles. The search warrant affidavit and Title III affidavits are all extremely detailed and contain a virtual roadmap to the government's case against Mr. Bumphus and others. Dinkin was anxious to begin reviewing the factual allegations with Mr. Bumphus and significant time was spent with him outlining the specific paragraphs in each document that made any reference to him.  It was anticipated that Mr. Bumphus would review the voluminous documents and that, at the next meeting, they could then begin to address the facts and start formulating a factual and legal defense. Significant to the upcoming difficulties between Mr. Bumphus and Dinkin, two of the affidavits provided to Bumphus were unsigned versions, most likely because the original affidavits were filed under seal.

     Dinkin next met with Mr. Bumphus on June 14, 2024. Mr. Bumphus was not interested in reviewing the assertions contained in the affidavits. Rather, Mr. Bumphus noted that one of the Title III affidavits and the search warrant affidavit were each unsigned. He had conducted, he said, considerable legal research, and correctly noted that unsigned affidavits were invalid. He insisted that Dinkin immediately file a Motion to Suppress the evidence derived from the search warrants and Title III Order for his phone calls. Dinkin advised that he would not file a Motion to Suppress unless he could verify that the affidavits that were filed with the Court were, in fact, unsigned. Dinkin advised Mr. Bumphus that it was very unlikely that the Court would issue Title III Orders and search warrants on unsigned affidavits. Mr. Bumphus became upset with counsel

for refusing to file the Motion to Suppress. Dinkin promised to investigate the status of the affidavits and the meeting ended.

On June 17, 2023, Dinkin went to the Clerk's Office in Norfolk and requested copies of the Title III affidavit and Order and the search warrant affidavit and the corresponding search warrants issued in the case. The material was indeed sealed and Dinkin was unable to procure them. Dinkin then contacted Assistant United States Attorney Eric Hurt, the prosecutor on this case, and requested a signed copy of the Title III affidavit relating to the phone allegedly used by Mr. Bumphus and the signed affidavit submitted in support of the two search warrants. On June 18, 2024, Mr. Hurt directed Dinkin to the signed version of the 139-page Title III affidavit in the discovery and provided signed copies of the search warrants issued by the Magistrate Judge. He did not, however, provide a signed copy of the affidavit in support of the search warrant, but said he was working on providing it. He did indicate that the search warrant affidavit was properly signed. This material was mailed to Mr. Bumphus in advance of the next meeting and Dinkin believed the issue had been resolved.

Before the next meeting, on July 1, 2024, Dinkin received a text message from Mr. Bumphus's girlfriend indicating that "Cortez said he has received the bull sh*t that you sent him." In a telephone call she also indicated that Mr. Bumphus wanted proof that counsel was actually appointed to represent him. In preparation for the next meeting, Dinkin searched the discovery for law enforcement reports that referenced Mr. Bumphus and reviewed prior work product produced by Mr. Woodward's investigator, Theresa Hinson. Dinkin met with Mr. Bumphus again on July 16, 2024, and brought Ms. Hinson to the meeting for the purpose of assisting in case preparation. Mr. Bumphus was unwilling to discuss the facts of the case, but rather complained vociferously that counsel was not doing his job because, while the search

warrants provided to him were signed by the judge, they did not have the filing stamp from the Clerk's Office on it. He continued to insist that the Title III Order and the search warrants were invalid and that a Motion to Suppress should be filed. Dinkin indicated that the next step would be to file a motion to unseal the search warrants and affidavits so that he could have everything he was asking for. Dinkin unfortunately told Mr. Bumphus that he thought this exercise would ultimately be a "waste of time" because it was very unlikely to uncover that the search warrants were issued on an unsigned affidavit and that the issue was keeping us from engaging in the substance of the case. Counsel acknowledges that the phrase "waste of time" was hurtful to Mr. Bumphus, who rightfully indicated that his constitutional rights were not a waste of time. To be clear, counsel was not suggesting to Mr. Bumphus that he would not continue to investigate the underlying affidavit, just that it was probably not a good allocation of resources. Nonetheless, at that point any meaningful communication with Mr. Bumphus completely broke down and, over the course of over an hour, no further work could be done, despite the presence of the investigator and the discovery materials, as Mr. Bumphus made clear his dissatisfaction with his representation. Dinkin eventually stated that if Mr. Bumphus did not want to work with him, he could file a motion to withdraw. Bumphus agreed that that was what he wanted.

    On July 17, 2024, Dinkin drafted and filed a Motion to Withdraw as Counsel. ECF no. 658. On July 29, 2024, Mr. Bumphus filed his pro se "Notice of Abandonment by Counsel; Motion for Appointment of Counsel," ECF no. 674, and on July 31, 2024, filed his Memorandum in Support of Motions to Compel; Notice of Abandonment by Counsel; Motion for Appointment of Counsel." ECF no. 682. In his memorandum, Mr. Bumphus significantly downplays his role in the July 17, 2024, meeting by not acknowledging that he was angry, confrontational and upset with Dinkin and apparently unwilling to move forward with him as

counsel. Dinkin does not believe he "abandoned" Mr. Bumphus, but rather gave him the option of having Dinkin move to withdraw from the case because of irreconcilable differences that were significantly interfering with case preparation. Counsel believes that Ms. Hinson would corroborate the foregoing version of events.

On July 31, 2024, Dinkin again met with Mr. Bumphus to apologize for the "waste of time" statement and to try and repair the relationship and move forward with the representation. Mr. Bumphus remained very angry with Dinkin and indicated that he wanted to proceed with his motion for new counsel. No substantive discussion about the case took place.

## LEGAL STANDARD

In *United States v. Mullen*, 32 F.3d 891, 895 (4th Cir. 1994), the Fourth Circuit articulated a three-pronged test to evaluate motions for new counsel: (1) whether the motion is timely; (2) whether the district court conducts an adequate inquiry; (3) whether the conflict between attorney and client amounts to a total lack of communication. *See also*, *United States v. Johnson*, 114 F.3d 435, 443 (4th Cir. 1997) ("A total lack of communication is not required. Rather an examination of whether the extent of the breakdown prevents the ability to conduct an adequate defense is the necessary inquiry.").

As applied in this case, first, the motion is timely. The trial in this matter is set to begin on January 14, 2025, which is more than five months away and provides ample time for another attorney to prepare for this case. There is no indication that the request for new counsel is interposed for the purpose of delaying the proceedings. Second, the Court has scheduled a hearing on the motion to withdraw/motion for new counsel and will certainly conduct an adequate inquiry into the breakdown in communications. Third, there is now a total lack of any meaningful communication between Mr. Bumphus and Dinkin. Bumphus has identified an issue

with the affidavits (whether they were signed by a judge) and the search warrants (whether they were filed with the court) that he would legitimately like to resolve. However, Dinkin's efforts to address his concerns have not, in his eyes, been sufficient. At their meeting on July 31, 2024, Bumphus refused to communicate with Dinkin at all about his case and this is severely hindering counsel's ability to prepare an adequate defense. It is also clear that Bumphus does not trust Dinkin and is unlikely to even listen to his legal advice, which will further impair trial preparation and his defense at the trial itself. The undersigned represents to the Court that he has a long history of zealously defending clients in federal court, even when the relationship between attorney and client becomes strained and this is only the second time counsel has filed a motion to withdraw from a representation, absent an actual conflict of interest, in over 22 years of practice as a federal criminal defense attorney. In this case, however, the extraordinary inability to productively communicate with Mr. Bumphus is significantly impairing his right to adequate representation.

<u>CONCLUSION</u>

For the foregoing reasons, counsel respectfully requests that the Court grant both the July 17, 2024, Motion to Withdraw as Counsel, ECF no. 658, and Mr. Bumphus's Motion and Memorandum in Support, ECF nos. 674 and 682, for new counsel.

Respectfully Submitted,

CORTEZ BUMPHUS

By: _____/s/_____
William J. Dinkin
VSB # 31198
Counsel to Cortez Bumphus
William J. Dinkin, PLC
101 Shockoe Slip, Suite J
Richmond, VA 23219

Tel. (804) 658-5373  
Fax (804) 207-4638  
bill.dinkin@dinkinlaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 1st day of August, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record, and that a copy was sent to Cortez Dayshawn Bumphus at the Western Tidewater Regional Jail.

_____/s/_____

William J. Dinkin  
VSB # 31198  
Counsel to Cortez Bumpuhs  
William J. Dinkin, PLC  
101 Shockoe Slip, Suite J  
Richmond, VA 23219  
Tel. (804) 658-5373  
Fax (804) 207-4638  
bill.dinkin@dinkinlaw.com