IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | Criminal No. 4:23cr54 |
| CORTEZ DAYSHAWN BUMPHUS, et al., ) | |
| ) | |
| Defendants. ) | |

**GOVERNMENT'S TRIAL MEMORANDUM**

The United States of America, by and through its attorneys, Erik S. Siebert, United States Attorney, and Eric M. Hurt and Luke J. Bresnahan, Assistant United States Attorneys, hereby submits its trial memorandum for the trial of defendants Cortez Dayshawn Bumphus, Dilquon Best, Kamani Johnson, and Earvin Jerome Moore.

**I.     CHARGES IN THE INDICTMENT**

The Second Superseding Indictment, returned April 18, 2024, charges defendants with 26 counts related to their participation in a Continuing Criminal Enterprise ("CCE"). Count One charges Defendants Cortez Dayshawn Bumphus ("Bumphus") and Dilquon Best ("Best") with a Continuing Criminal Enterprise, in violation of 21 U.S.C § 848. Count Two charges the defendants with Conspiracy to Possess with Intent to Distribute and Distribute Marijuana, Cocaine, Oxycodone, Psilocybin, Promethazine, and Fentanyl, in violation of 21 U.S.C §§ 846, 841(a)(1) and (b)(1)(A)-(C). Count Three charges the defendants with Conspiracy to Launder Money, in violation of 18 U.S.C § 1956(h). The Second Superseding Indictment also charges, as substantive crimes, nine individual drug offenses committed by defendants, in violation of 21 U.S.C § 841(a)(1) (Counts 4, 12, 13, 14, 15, 47, 48, 58, 59). Defendants Bumphus and Johnson are each charged with one count of Felon in Possession of Firearm, in violation of 18 U.S.C §§ 922(g)(1)

and 924(a)(2) (Counts 16, 51). Defendant Bumphus is also charged with three counts of Possessing a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Counts 17, 18, 19), and Defendant Johnson is also charged with two counts of Possessing a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Counts 52, 53). Defendants Bumphus and Moore are each charged with one count of Maintaining a Drug Involved Premises, in violation of 21 U.S.C. § 856(a)(2) (Counts 20, 60). Each of the defendants is charged with Use of a Communication Facility in Furtherance of Drug Trafficking, in violation of 21 U.S.C. § 843(b) (Counts 5, 21, 50, 61). Defendant Johnson is also charged with Interstate Travel in Aid of Racketeering, in violation of 18 U.S.C. § 1952(a)(3) (Count 49).

## II.     FACTUAL BACKGROUND

Federal law enforcement opened an investigation into LUX AUTO circa June 2021 after receiving information about large-scale drug trafficking activity at the business. Additionally, LUX AUTO was referenced in a separate open FBI investigation into a shooting incident that occurred on or about August 27, 2021, in Hampton, VA, where Hampton Police Division officers were targeted by gunfire. Defendants in this case were using LUX AUTO as a base of operations on the east coast while being supplied by Sources of Supply ("SoS") in California and elsewhere. Video footage obtained from Technical Surveillance of LUX AUTO corroborated the storage of illegal drugs in multiple vehicles throughout the parking lot of LUX AUTO. This surveillance also established that members of the organization were frequently armed with handguns and/or assault style weapons. These weapons were visible on the camera and were recorded. Technical Surveillance at storage units in Newport News also corroborated the storage of suitcases full of suspected illegal drugs off of the LUX AUTO lot.

Law enforcement utilized a wide range of investigative techniques over the course of this multi-year investigation, to include an expansive financial investigation that uncovered over

2

$22,000,000 flowing in and out of various accounts belonging to or associated with the defendants and their associates, plus approximately $5,000,000 flowing between Peer to Peer ("P2P") accounts. Various methods of surveillance, controlled evidence purchases, covert-entry search warrants, airport interdictions, and Title-III wire and data intercepts largely contributed to the overall discovery of a successful, multi-faceted conspiracy to traffic thousands of pounds of illegal marijuana via commercial aircraft into the Commonwealth of Virginia.

Between March 2022 and July 2023, the United States District Court for the Eastern District of Virginia approved approximately 15 initial and/or renewal Applications for Orders authorizing the interception of wire and/or electronic communications occurring over telephones utilized by various defendants. During those interceptions, the communications of each defendant were, at times, intercepted and found to be facilitating or discussing the criminal activity of this criminal enterprise. Those communications, marked as "Pertinent" by monitors or reviewers, laid the foundation for a widespread conspiracy dating back approximately seven years.

Between August 17, 2020, and January 25, 2023, several monetary seizures occurred at various major airports in the Mid-Atlantic area. Of those seizures, a total of nearly $400,000 in U.S. currency (cash) was seized from members and/or associates of this criminal enterprise. This currency was either derived from the sale of controlled substances or was intended for the purchase of distribution amounts of controlled substances, primarily being marijuana.

Between January 20, 2021, and August 24, 2023, several seizures of illegal marijuana and/or related contraband took place at major airports in the Mid-Atlantic area. To date, almost 1,000 pounds of illegal marijuana have been seized through targeted interdiction operations, many of which were developed through monitoring of the aforementioned Title-III wire and data intercepts. According to intercepted conversations and airline records between 2017 and 2024, the organization was trafficking as much as 1,000 pounds of marijuana per week into the

Commonwealth of Virginia. This is corroborated by the fact that the organization spent more than $500,000 on air travel in support of the movement of marijuana from the SoS to the Commonwealth of Virginia.

The members of the organization had varying roles and responsibilities. The leaders of this drug trafficking operation engaged with the sources of supply outside the Commonwealth of Virginia and arranged for the purchase of large loads of marijuana that were then marked for transportation to the Eastern District of Virginia. The leaders would then instruct other members of the organization to arrange for couriers to fly to the SoS, deliver money to them, and then return to the Eastern District of Virginia with the marijuana. The leaders would then arrange for midlevel members of the organization to receive the marijuana from the couriers and distribute it to customers or have subordinate dealers sell the marijuana.

The leaders of the organization had lieutenants who were responsible for arranging for couriers to travel to the SoS to obtain the marijuana, for obtaining locations to store the marijuana, and for insuring the ultimate distribution of the marijuana. These lieutenants would sometimes travel to the SoS themselves or would accompany couriers on their travels. The lieutenants supervised individuals who were responsible for distributing the marijuana and sometimes receiving the marijuana from the couriers as they returned from the SoS. These individuals at times were also expected to collect the proceeds from the sale of the marijuana. The couriers would be contacted by members of the organization when the need for marijuana transportation arose. The couriers were provided with tickets to the SoS and usually two suitcases. The couriers would then be transported to various airports in the Eastern District of Virginia for flights to the SoS. The couriers would take the suitcases, often filled with currency, and travel to the SoS. When the couriers arrived at their destination, they would be met by representatives from the SoS, and the suitcases would be filled with between 20 and 80 pounds of marijuana. The following day, the

couriers would return to the Eastern District of Virginia with the suitcases full of marijuana. When the couriers arrived in the Eastern District of Virginia, members of the organization would either meet them at the airport or arrange for the couriers to Uber to a location where they would surrender the suitcases. The couriers were paid as much as $1,500.00 for these trips. The organization possessed this rough structure of organization over a period of years. However, the role of the individuals in the organization was at times fluid. Organization members were often called upon to perform multiple roles. If a situation arose, a non-courier might be required to travel to the SoS to transport marijuana. Also, some members of the organization, in addition to their traditional role, might need to do paperwork for a flight, deposit drug proceeds into an account, or aid in the storage of marijuana.

### III. GOVERNING LAW

The elements of the charged statutes are set forth below along with relevant case law.

<u>Continuing Criminal Enterprise (21 U.S.C § 848) (Count One)</u>

FIRST: That the defendants committed a felony violation of the federal drug laws;

SECOND: That this offense was part of a series of three or more offenses committed by the defendants in violation of the narcotics laws which make it a crime to distribute and possess with intent to distribute controlled substances;

THIRD: That the defendants committed the offenses in this series of violations in concert with five or more other persons;

FOURTH: That the defendants acted as organizers, supervisors, or managers of these five or more persons; and

FIFTH: That the defendants obtained substantial income or resources from the series of narcotics laws violations.

"The requirement that the conduct must take place as a part of a continuing series of

violations has been held to require proof of three or more related violations, *United States v. Young,* 745 F.2d 733, 747 (2d Cir. 1984), *cert. denied,* 407 U.S. 1084 (1985), but this does not require proof of a large drug trafficking operation. It is the continuing series of violations, and not the overall size of the operation, that must be proved as a second element." *United States v. Tanner*, No. 89-5237, 1990 WL 173801, at *4 (4th Cir. Nov. 9, 1990).

The Supreme Court has held that "a jury has to agree unanimously about which specific violations make up the continuing series." *Richardson v. United States*, 526 U.S. 813, 815 (1999). Thus, following *Richardson*, the trial court must instruct, and the jury unanimously agree, on which predicate offenses constitute the "continuing series of violations" under the statute. *Id*.

The CCE statute "is designed to reach the 'top brass' in the drug rings, not the lieutenants and foot soldiers." *Garrett v. United States,* 471 U.S. 773 (1985). However, a "defendant need not fit the label of 'kingpin' or 'ringleader' to be convicted under § 848." *United States v. Johnson*, 54 F.3d 1150, 1155 (4th Cir. 1995) (quoting *United States v. Baker*, 10 F.3d 1374, 1409 (9th Cir. 1993)). Indeed, a CCE may have more than one head." *Johnson*, 54 F.3d at 1155. In proving the "organizer or supervisor" element, the government is not required to prove that the five individuals were supervised at the same time, nor must the five individuals be under the direct or immediate control of the defendant. *United States v. Ricks*, 882 F.2d 885, 891 (4th Cir. 1989). Nor must the government "show that the defendant had personal contact with the five persons because organizational authority and responsibility may be delegated." *United States v. Heater*, 63 F.3d 311, 317 (4th Cir. 1989) (internal quotation omitted). The trial court is not required to instruct, nor must the jury unanimously agree, on which five persons were supervised, organized, or managed. *United States v. Hall*, 93 F.3d 126, 130 (4th Cir. 1996); *United States v. Stitt*, 250 F.3d 878, 886 (4th Cir. 2001).

The statute does not define "substantial income or resources." The Fourth Circuit has

6

previously found tens of thousands of dollars to be sufficient to support a CCE conviction. *United States v. Webster*, 639 F.2d 174, 182 (4th Cir. 1981) (holding that "given the quantity of drugs which were shown to have been moving in and out of Webster's possession, the jury would have been justified in concluding that he had received tens of thousands or even hundreds of thousands of dollars from his drug business. The evidence was thus more than sufficient for conviction.").

<u>Conspiracy to Possess with Intent to Distribute and Distribute Marijuana, Cocaine, Oxycodone, Psilocybin, Promethazine, and Fentanyl (21 U.S.C §§ 846, 841(a)(1)) (Count Two)</u>

- FIRST: That there was an agreement between two or more persons to distribute and/or possess with intent to distribute a controlled substance;
- SECOND: That the defendant knew of this agreement or conspiracy; and
- THIRD: That the defendant knowingly and voluntarily participated in or became a part of this agreement or conspiracy.

<u>Conspiracy to Launder Money (18 U.S.C § 1956(h)) (Count Three)</u>

- FIRST: That there was an agreement by two or more persons to conduct or attempt to conduct a financial transaction involving the proceeds of specified unlawful activity, namely, conspiracy to distribute narcotics;
- SECOND: That the defendant knew that the property involved in the financial transactions was the proceeds of some form of unlawful activity;
- THIRD: That the defendant acted with the intent to promote the carrying on of specified unlawful activity.

<u>Possession with Intent to Distribute Marijuana, Psilocybin, and Oxycodone (21 U.S.C § 841(a)(1) (Counts 4, 12, 13, 14, 15, 47, 48, 58, 59)</u>

- FIRST: The defendant knowingly possessed a controlled substance;
- SECOND: The defendant knew that the substances in question were controlled substances; and

7

| | | |
|---|---|---|
| THIRD: | | The defendant intended to distribute some or all of the controlled substances. |

Possession may be "actual or constructive, and it may be sole or joint." *See United States v. Nelson,* 6 F.3d 1049, 1053 (4th Cir. 1993), *cert. denied,* 511 U.S. 1131 (1994). Thus, "[p]ossession need not be exclusive, but may be shared with others . . . ." *United States v. Laughman,* 618 F.2d 1067, 1077 (4th Cir. 1980) (alteration in original) (internal quotation marks omitted). Constructive possession may be proved by demonstrating "that the defendant exercised, or had the power to exercise, dominion and control over the item." *United States v. Rusher,* 966 F.2d 868, 878 (4th Cir. 1992), *cert. denied,* 506 U.S. 926 (1992). Multiple persons possessing a large quantity of drugs and working in concert sufficiently establish constructive possession. *See United States v. Watkins,* 662 F.2d 1090, 1097–98 (4th Cir. 1981), *cert. denied,* 455 U.S. 989 (1982).

Felon in Possession of Firearm (18 U.S.C §§ 922(g)(1) and 924(a)(2)) (Counts 16, 51, 53)

| | | |
|---|---|---|
| FIRST: | | That the defendant knowingly possessed one or more of the firearms described in Counts Sixteen, Fifty-One, and Fifty-Three; |
| SECOND: | | That at the time of the charged act, the defendant had previously been convicted in a court of a crime punishable by imprisonment for a term exceeding one year; |
| THIRD: | | That the firearm(s) had been shipped or transported in interstate or foreign commerce. |

Possessing a Firearm in Furtherance of a Drug Trafficking Crime (18 U.S.C. § 924(c)(1)(A)) (Counts 17, 18, 19, 52)

| | | |
|---|---|---|
| FIRST: | | The defendant committed the predicate drug trafficking crimes for which they may be prosecuted in a court of the United States; and |

8

    SECOND:    The defendant knowingly possessed a firearm in furtherance of the commission of the predicate drug trafficking crimes.

In order to prove a § 924(c) violation predicated on possession of a firearm in furtherance of a drug trafficking crime, the government is required "to present evidence indicating that the possession of a firearm furthered, advanced, or helped forward a drug trafficking crime. However, whether the firearm served such a purpose is ultimately a factual question." *See United States v. Lomax,* 293 F.3d 701, 705 (4th Cir. 2002). Factors that the jury may consider include: "the type of drug activity that is being conducted, accessibility of the firearm, the type of weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found." *Id.* (internal quotation marks omitted).

Maintaining a Drug Involved Premises (21 U.S.C. § 856(a)(2)) (Counts 20, 60)

    FIRST:    That the defendants opened, leased, rented, used, or maintained the place described in Counts Twenty and Sixty, either permanently or temporarily; and

    SECOND:    That the defendants did so for the purpose of manufacturing, distributing, or using a controlled substance; and

    THIRD:    That the defendants did so knowingly.

Use of a Communication Facility in Furtherance of Drug Trafficking (21 U.S.C. § 843(b)) (Counts 5, 21, 50, 61)

    FIRST:    The defendant knowingly used a communication facility; and

    SECOND:    The defendant used the communication facility with the intent to commit and facilitate the commission of an illegal act involving drugs.

Interstate Travel in Aid of Racketeering (18 U.S.C. § 1952(a)(3)) (Count 49)

> FIRST: The defendant traveled from one state to another;
>
> SECOND: The defendant did such travel with the intention to promote, manage, establish or carry on the activity described in Count Forty-Nine of the Second Superseding Indictment (namely, conspiracy to distribute and possess with intent to distribute controlled substances);
>
> THIRD: The activity described in Count Forty-Nine of the Second Superseding indictment was illegal under the laws of the United States;
>
> FOURTH: After the interstate travel, the defendant knowingly and deliberately, did an act, or attempted to do an act, in order to promote, manage, establish, or carry on the activity described in Count Forty-Nine of the Second Superseding Indictment.

## IV.  ANTICIPATED TRIAL EVIDENCE

The government's principal witnesses in its case-in-chief and corresponding evidence are as follows. The government anticipates its case-in-chief to last 9 to 10 days.

*Cooperating Witnesses*

The United States will present a number of cooperating witnesses who have pleaded guilty and have been or are awaiting sentencing. These witnesses are cooperating pursuant to a cooperation agreement and in most cases hope that their cooperation will result in a reduced sentence. These witnesses will describe their activities in the conspiracy and will also testify about other members of the conspiracy, including the defendants at trial.

*Law enforcement/government witnesses*

The United States will present a number of law enforcement witnesses. Several of these witnesses were involved in drug and money interdictions, conducted search warrants at defendants' residences or dealt with evidence seized during the investigation. In addition, the

United States will call law enforcement witnesses who will explain various T-III telephone calls, will describe surveillance videos, or will provide expert testimony about firearms and drug trafficking.

*Evidence of Drug-Related Activities*

Evidence of drug-related activity will be presented through recorded calls, surveillance videos and photographs, and law enforcement interdictions and enforcement actions.

*Expert Testimony on Drug Distribution Methods and Organizations*

The United States will call a DEA Special Agent who will be qualified as an expert in the area of drug trafficking methods and organizations. He will explain how drug organizations operate and how the trafficking in various drugs generates cash proceeds. His proposed areas of testimony are more thoroughly set out in the United States' notice of intent to offer expert testimony that was provided to defense counsel.

*Evidence of Substantial Resources*

To prove the CCE, the government is required to put on evidence of "substantial" resources as one of the elements of the crime. The United States will offer the testimony of a forensic financial examiner which will establish that the defendants generated substantial income during the life of the CCE. The financial documents reviewed by the witness will not be offered into evidence (F.R.E. 703) but have been provided to the defendants along with the F.R.E. 902(11) certifications. The United States will also offer evidence that the defendants reported minimal taxable income and collected government assistance during this time period. "[E]vidence of unexplained wealth is relevant in narcotics prosecution as evidence of illegal dealings and ill-gotten gains." *United States v. Grandison,* 783 F.2d 1152, 1156 (4th Cir. 1986).

*Proof of Controlled Substances*

The United States will seek to prove the controlled substances at issue – marijuana, psilocybin, promethazine, oxycodone, and cocaine – based on seizures from search warrants and from witness testimony regarding the historic drug trafficking of the CCE. "[L]ay testimony and circumstantial evidence of the historic drugs may be sufficient, without the introduction of an expert chemical analysis, to establish the identity of the controlled substance … ." *United States v. Dolan*, 544 F.2d 1219, 1221 (4th Cir. 1976).

## V. ANTICIPATED EVIDENTIARY OR LEGAL ISSUES IN DISPUTE

### A. Application of the Hearsay Rules

The government has filed a motion *in limine* seeking to exclude certain evidence defendants may present. ECF No. 1320. While the government is unaware of potential objections by defendant to any of the government's anticipated evidence, it outlines below the evidentiary bases of certain of its evidence and other evidentiary matters.

#### 1. Statements of Defendants

The government will introduce many statements made by defendants in different circumstances including phone calls, in-person meetings, jail calls, and post-arrest interviews. Such statements are of course admissible in the government's case in chief under Federal Rule of Evidence 801(d)(2)(A) as statements of a party-opponent. Further, when testimony relates to conversations with defendant, the government may seek to introduce statements of the person with whom defendant was speaking in order "to place [defendant's] responses into context," *United States v. Wills*, 346 F.3d 476, 490 (4th Cir. 2003), and to make defendant's statements "intelligible to the jury and recognizable as admissions," *id.* (quoting *United States v. Lemonakis*, 485 F.2d 941, 948 (D.C. Cir. 1973)). Such statements are also admissible for other non-hearsay reasons such as notice to defendant and effect on the listener.

#### 2. Statements in Furtherance of the Conspiracy

Many of the statements that the United States intends to introduce are statements by co-conspirators, both charged and uncharged, made during and in furtherance of the conspiracy. Under Federal Rule of Evidence 801(d)(2)(E), such statements – that is, statements offered against an opposing party, made by that party's co-conspirator during and in furtherance of the conspiracy – are excluded from the definition of hearsay.

In order to admit coconspirator statements under Rule 801(d)(2)(E), the government "must show that (i) a conspiracy did, in fact, exist, (ii) the declarant and the defendant were members of the conspiracy, and (iii) the statement was made in the course of, and in furtherance, of the conspiracy." *United States v. Graham*, 711 F.3d 445, 453 (4th Cir. 2013) (quoting *United States v. Pratt*, 239 F.3d 640, 643 (4th Cir. 2001)). Each of these three factors "must be supported by a preponderance of the evidence." *Id*. (citing *United States v. Blevins*, 960 F.2d 1252, 1255 (4th Cir. 1992)). In support of the admission of coconspirator statements, the government will introduce evidence sufficient to support a finding as to each of the three necessary factors.

Importantly, the Fourth Circuit has stated that "[a] statement by a co-conspirator is made 'in furtherance' of a conspiracy if it was intended to promote the conspiracy's objectives, whether or not it actually has that effect." *United States v. Smith*, 441 F.3d 254, 262 (4th Cir. 2006) (quoting *United States v. Shores*, 33 F.3d 438, 443 (4th Cir. 1994)). In addition, the Fourth Circuit has construed the requirement that the proffered statements be made in support of the conspiracy "so broadly that even casual relationships to the conspiracy suffice to satisfy the exception." *Id*. (internal quotations omitted). The government will meet this standard.

### B. Summary Charts

The United States intends to offer summary charts of voluminous financial records. Courts have approved and encouraged the use of summary charges where there are numerous documents or other items being summarized. *See* Fed. R. Evid. 1006; *United States v. Loayza*, 107 F.3d 257,

13

264 (4th Cir. 1997). Generally speaking, "[s]ummary charts are admissible if they aid the jury in ascertaining the truth. The complexity and length of the case as well as the numbers of witnesses and exhibits are considered in making that determination." *Loayza*, 107 F.3d at 264, *citing United States v. Johnson*, 54 F.3d 1150, 1156 (4th Cir. 1995).

          Respectfully submitted,

          ERIK S. SIEBERT
          UNITED STATES ATTORNEY

By:   /s/
          Eric M. Hurt
          Luke J. Bresnahan
          Assistant United States Attorneys
          United States Attorney's Office
          City Center One, Suite 200
          11815 Fountain Way Newport News, Virginia 23606
          (757) 591-4000 Office
          (757) 591-0866 Fax
          E-Mail:  eric.hurt@usdoj.gov
                    luke.bresnahan@usdoj.gov

**CERTIFICATE OF SERVICE**

I certify that on June 24, 2025, I electronically filed a copy of the foregoing with the clerk of the court using the CM/ECF system, which will send a notification of such filing to all counsel of record. In addition, the United States mailed a copy to:

Kamani Johnson
Western Tidewater Regional Jail
2402 Godwin Blvd,
Suffolk, VA 23434

/s/
Eric M. Hurt
Assistant United States Attorney